UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 09-00196-TLM |
| LINDIE KAYE BORTON ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

This matter comes before the Court on the issue of confirmation of the Third Amended Plan, Doc. No. 182 ("Plan") of debtor in possession Lindie Kaye Borton ("Debtor"). A final hearing on confirmation was held on October 17, 2011, after which the matter was taken under advisement.

The Court determines that confirmation shall be denied for Debtor's failure to satisfy the "absolute priority rule" of § 1129(b)(2)(B) in this individual chapter 11 case.[1] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law under Rules 9014 and 7052.

**BACKGROUND AND FACTS**

Debtor filed a voluntary chapter 11 petition on January 28, 2009. Debtor is

---

[1] Unless otherwise indicated, all statutory references including those to chapter and section are to the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION - 1

a medical doctor, specializing in dermatology. She holds licenses in California and Idaho. During this chapter 11 case, she has operated a business through a subchapter S corporation, Lindie Borton, M.D., P.A., dba Sun Valley Skin Center, an entity formed in 2000 of which she is the sole shareholder.[2] The corporation has not filed a petition in bankruptcy. Debtor's income is derived solely from the corporation. Her bankruptcy was and is designed, in significant part, to deal with personal taxes owed the Internal Revenue Service ("IRS") and the Idaho State Tax Commission ("ISTC").[3]

The course of the case has been fitful. There were continuances of the § 341(a) meeting; a change in Debtor's counsel; delays in the seeking, supporting and obtaining the required court approval of employment of such counsel and other professionals; problems with financial reporting; and other matters. In July 2009, the United States Trustee ("UST") moved to convert or dismiss the case, which resulted in an agreed order requiring Debtor to file a disclosure statement and plan by October 2009.

---

[2] Initially, Debtor's corporation had offices in both Ketchum/Sun Valley, Idaho and Boise, Idaho. During the pendency of this chapter 11, the Ketchum office has been closed. Debtor also indicates that the business' mix of cosmetic dermatology and medical dermatology has changed since the date of filing, in response to general economic conditions.

[3] In general, the disclosure statements reflect that a combination of difficulties with an ex-spouse and her business led Debtor to amass large amounts of debt, including substantial unpaid trust taxes and income taxes. An agreement was reached between Debtor's corporation and the IRS under which the corporation made certain payments. Given the length of the case, a large amount of the tax liabilities has been satisfied. The Plan, however, still attempts to address secured, priority unsecured, and general unsecured claims of the IRS and ISTC.

MEMORANDUM OF DECISION - 2

The first disclosure statement eventually came on for hearing in December of that year, at which time Debtor announced, with the UST's agreement, that an amended disclosure statement and plan would be filed. That amended plan and a related disclosure statement were filed in March 2010. However, Debtor did not move these proposals forward. The Court therefore set and held a status conference under § 105(d) in August 2010, and ordered that an amended plan and disclosure statement be filed. These documents were filed in September 2010. That disclosure statement was approved in November 2010, and a confirmation hearing on the accompanying plan set for January 3, 2011.

Immediately prior to that confirmation hearing, Debtor filed a "ballot summary" consistent with Local Bankruptcy Rule 3018.1. It indicated that only one acceptance or rejection had been received. Careful review of that ballot, however, established that the creditor accepting the plan was in fact a post-petition creditor whose claims arose well after the January 2009 petition date, and was not a creditor classified or treated under the plan.

Debtor requested additional time to evaluate what was represented to be a forthcoming "late-filed" ballot. That request was granted. However, the sole "late" ballot ultimately received rejected the plan. Debtor thus had no accepting impaired class, and failed to satisfy § 1129(a)(10). On February 14, 2011, confirmation was denied.

MEMORANDUM OF DECISION - 3

The UST renewed its motion for dismissal or conversion in March 2011. Debtor responded with the now-pending (third amended) Plan in May 2011.

The Plan classified administrative expenses in Class I. Priority tax claims owed the IRS and the ISTC were placed in Class II.[4] An IRS secured claim was the sole claim in Class III. Class IV contained all unsecured creditors. The Class IV creditors were to receive under the Plan an estimated .05% distribution on their claims, funded at $100.00 per month from the effective date through January 2014. Debtor would retain all interests and property under the Plan.

The Plan came on for hearing on September 26, 2011. Prior to that hearing, and consistent with the requirements of LBR 3018.1, Debtor filed an amended ballot summary, reflecting all acceptances and rejections of the Plan. *See* Doc. No. 211. The ISTC filed an accepting ballot in Class II. As this was the sole ballot in that impaired class, Class II accepted the Plan.[5]

The unsecured creditors' class, Class IV, did not accept. There were three ballots submitted in that class. While two were acceptances, meeting the

---

[4] The IRS priority claim is listed at approximately $287,000 and is to be paid monthly with 4% interest. The ISTC priority claim of approximately $65,000 receives similar treatment. The IRS appeared at hearing through counsel and advised that, while it did not oppose the Plan, it had concerns with whether Debtor would be able to meet the required timetable for satisfying these claims. *See* § 1129(a)(9)(C)(ii) (requiring, *inter alia*, that the payments on § 507(a)(8) claims be made in a period not exceeding 5 years from the date of the order for relief).

[5] Therefore, and unlike the situation with the second amended plan, the requirement of § 1129(a)(10) that an impaired class of non-insider creditors accept the plan was satisfied.

MEMORANDUM OF DECISION - 4

numerosity requirement of § 1126(c), the two accepting ballots totaled only $10,354.00, and the rejecting creditor's ballot in the class was in the amount of $10,056.71. Debtor thus failed to reach the required two-thirds in amount threshold needed for the class to accept the Plan.[6]

There were no objections to confirmation filed or advanced at hearing by any creditor or party in interest.[7]

When the Plan came on for confirmation hearing on September 26, Debtor was not prepared to address the confirmation issues under § 1129(b)(2)(B) that were necessarily implicated by the failure of Class IV, the unsecured creditor class, to accept the Plan. The hearing was continued to October 17, and Debtor was instructed to file a prehearing brief on the issue.

A five-page brief was filed, Doc. No. 214, wherein Debtor cited and discussed a single case, *In re Shat*, 424 B.R. 854 (Bankr. D. Nev. 2010), from which she argued that the Court could properly confirm the Plan notwithstanding the lack of acceptance by the unsecured creditors' class.

---

[6] A class of creditors accepts a plan if more than one half in number and two-thirds in amount submit acceptances. *See* § 1126(c).

[7] Though the attorney for the IRS appeared and voiced some concerns, that creditor did not object to confirmation. Additionally, the UST appeared and noted the need for Debtor to satisfy § 1129(b)(2)(B) given the lack of acceptance by Class IV. However, it raised no objection to confirmation. And, at the subsequent October hearing discussed *infra*, the UST again appeared but, after noting the issue of absolute priority was implicated and acknowledging the split of authority on that subject, "declined" to take a position on what was required for an individual chapter 11 debtor to meet the § 1129(b)(2)(B) standard.

MEMORANDUM OF DECISION - 5

**DISCUSSION AND DISPOSITION**

A plan proponent bears the burden of proving by a preponderance of the evidence that all the requirements for confirmation of a chapter 11 plan are met.[8] This requires proof either that the plan meets all requirements of § 1129(a) or, if the only § 1129(a) requirement not satisfied is § 1129(a)(8), that the plan satisfies the cramdown alternative of § 1129(b). *In re Smitty Inv. Grp., LLC*, 2008 WL 2095523, at *4 (Bankr. D. Idaho 2008) (citing *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997); *United States v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994)).

As noted above, Borton concedes her Plan fails to meet the requirements of § 1129(a)(8).[9] However, she contends that it can properly be confirmed under the provisions of § 1129(b). Section 1129(b)(1) provides that if all the requirements of subsection (a) of § 1129 other than (8) are met, a proposed plan must be confirmed if it "does not discriminate unfairly, and is fair and equitable, with

---

[8] "The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors." *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994).

[9] Section 1129(a)(8) requires that, "[w]ith respect to each class of claims or interests– (A) such class has accepted the plan; or (B) such class is not impaired under the plan." The unsecured creditors class is impaired under the Plan as creditors in that class stand to receive less than 1% of their claims. *See* § 1124. And, as noted above, the class did not accept the Plan.

MEMORANDUM OF DECISION - 6

respect to each class of claims or interests that is impaired under, and has not accepted, the plan." With respect to a class of unsecured creditors, a plan is fair and equitable if

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

11 U.S.C. § 1129(b)(2)(B) (emphasis added).[10]

Here, because Debtor's Plan does not contemplate payment of the unsecured creditors in full pursuant to § 1129(b)(2)(B)(i), it must satisfy the requirements of § 1129(b)(2)(B)(ii) to be confirmable. The question of what § 1129(b)(2)(B)(ii) requires of an individual chapter 11 debtor has generated considerable discussion among commentators and a split of authority among the nation's bankruptcy courts. At the heart of the debate are the amendments to the Code effectuated by BAPCPA.

---

[10] The italicized language was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). The issue presented in this case, as succinctly characterized by the court in *In re Kamell*, 451 B.R. 505 (Bankr. C.D. Cal. 2011), is whether the BAPCPA-added language has effectively abrogated the unitalicized portions, commonly referred to as the "absolute priority rule," in individual chapter 11 cases. *Id.* at 507.

MEMORANDUM OF DECISION - 7

Prior to BAPCPA, § 1129(b)(2)(B)(ii) provided that a plan was "fair and equitable" to a class of impaired, non-accepting unsecured creditors if "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." This provision, referred to generally as the "absolute priority rule," applied equally to individual debtors and debtors that were entities. *See Perez*, 30 F.3d at 1212-14 (concluding individual chapter 11 debtor's plan failed to satisfy the absolute priority rule).[11]

BAPCPA modified the Code section embodying the absolute priority rule by amending § 1129(b)(2)(B)(ii) to provide that, in the case of an individual debtor, a plan may be fair and equitable even though the debtor retains "property included in the estate under section 1115 . . . ." Section 1115, a new provision also added by BAPCPA, states, in pertinent part:

> (a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541 –
>
> > (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is

---

[11] As the Ninth Circuit explained in *Perez*:

> The phrase "fair and equitable" is not a vague exhortation to bankruptcy judges that they do the right thing; rather, it implements the so-called absolute priority rule under which an objecting class must be paid in full before any claim or interest junior to it gets anything at all.

30 F.3d at 1212-13.

MEMORANDUM OF DECISION - 8

>> closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
>
>> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

Since BAPCPA, courts have been tasked with determining the impact of these changes on the absolute priority rule's applicability in individual chapter 11 cases.

Some courts have adopted the position that, due to the BAPCPA addition of § 1115 and the reference to § 1115 in § 1129(b)(2)(B)(ii), Congress eliminated the absolute priority rule completely from individual chapter 11 cases. *See In re Shat*, 424 B.R. 854, 865-68 (Bankr. D. Nev. 2010); *In re Johnson*, 402 B.R. 851, 852-53 (Bankr. N.D. Ind. 2009); *In re Roedemeier*, 374 B.R. 264, 273-76 (Bankr. D. Kan. 2007); *In re Tegeder*, 369 B.R. 477, 479-81 (Bankr. D. Neb. 2007); *In re Bullard*, 358 B.R. 541, 543-45 (Bankr. D. Conn. 2007). This group of cases is sometimes characterized as the "broad view" because they construe § 1115 as encompassing *all* property of the estate in an individual chapter 11 case, thus permitting the debtor to retain all such property under § 1129(b)(2)(B)(ii).

Other courts, however, starting notably with *In re Gbadebo*, 431 B.R. 222, 227-30 (Bankr. N.D. Cal. 2010), have disagreed, determining that the addition of § 1115 and the cross-reference thereto in § 1129(b)(2)(B)(ii) only serve to abrogate the absolute priority rule as to post-petition earnings and other property

MEMORANDUM OF DECISION - 9

acquired after the commencement of the case. *See Kamell*, 451 B.R. at 507-12; *In re Maharaj*, 449 B.R. 484, 491-94 (Bankr. E.D. Va. 2011); *In re Walsh*, 447 B.R. 45, 47-49 (Bankr. D. Mass. 2011); *In re Stephens*, 445 B.R. 816, 820-21 (Bankr. S.D. Tex. 2011); *In re Karlovich*, 2010 WL 5418872, at *3-4 (Bankr. S.D. Cal. Nov. 16, 2010); *In re Gelin*, 437 B.R. 435, 441-43 (Bankr. M.D. Fla. 2010); *In re Steedley*, 2010 WL 3528599, at *2-3 (Bankr. S.D. Ga. Aug. 27, 2010); *In re Mullins*, 435 B.R. 352, 359-61 (Bankr. W.D. Va. 2010). This approach is at times referred to as the "narrow view" based on the more limited scope it gives to § 1115.[12]

This Court agrees with the observation in *Maharaj* that "[s]o many able jurists have written so extensively on this issue that little purpose would be served by yet another analysis of the competing arguments." 449 B.R. at 492. Accordingly, it will refrain from engaging in any such analysis here.[13]

Upon its own consideration of the issues, and of the thoughtful analyses by courts on all sides of the matter, this Court is of the view that the statutory

---

[12] As with most divisions in case law interpreting BAPCPA amendments, there are differences in detail and nuance even within cases that reach the same ultimate result. For example, within those courts holding to the narrow view, there are those that view the language of the amended Code as unambiguous, *see*, *e.g.*, *Walsh*, 447 B.R. at 48-49, *Steedley*, 2010 WL 3528599, at *2, *Karlovich*, 2010 WL 5418872, at *3-4; *Mullins*, 435 B.R. at 360; *Gbadebo*, 431 B.R. at 229-30, and those that find ambiguity but resolve doubts regarding the Code's language through use of other interpretative tools, *see*, *e.g.*, *In re Lindsey*, 453 B.R. 886, 903 (Bankr. E.D. Tenn. 2011); *Kamell*, 451 B.R. at 509; *Gelin*, 437 B.R. at 441.

[13] For a detailed discussion of the recent cases addressing the absolute priority issue, *see Lindsey*, 453 B.R. at 891-903.

MEMORANDUM OF DECISION - 10

language is unambiguous, and that the "narrow view" is the correct view. Section 1129(b)(2)(B)(ii) leaves the absolute priority rule in place, but clearly now excepts from that rule "property included in the estate under section 1115." Section 1115 provides that, in an individual chapter 11 case, in addition to the property specified in § 541 (which is made applicable in chapter 11 cases by § 103(a)), the estate includes the debtor's post-petition earnings and certain other property acquired after commencement of the case. Section 1115 thus speaks only of post-petition property. It therefore supplements § 541, but it does not supplant or subsume § 541 as suggested by those courts adopting a broad interpretation of § 1115. Accordingly, the absolute priority rule of § 1129(b)(2)(B)(ii), a rule firmly endorsed and enforced in this Circuit under *Perez*, remains effective in individual chapter 11 cases as to prepetition property retained by the debtor.

## CONCLUSION

Debtor does not propose to pay unsecured creditors 100% of their claims; in fact, she proposes to pay, over time, less than 1% of their claims. That impaired class did not accept the Plan. *See* §§ 1124; 1126(c); 1129(a)(8). Debtor was required to prove that the Plan was nonetheless fair and equitable, which includes that no junior interests receive or retain anything under the Plan. *See* § 1129(b)(1) & (2). That required element was not established. Confirmation of the Plan will therefore be denied. The Court will enter an order accordingly.

MEMORANDUM OF DECISION - 11

DATED: November 9, 2011



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 12